SO ORDERED.

SIGNED this 15 day of April, 2010.

_____
Randy D. Doub
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

JESSICA NIELE SMITH,            CASE NUMBER: 09-06440-8-RDD
                                CHAPTER 13

DEBTOR.

_____

## ORDER

This matter came before the court on the trustee's motion for confirmation, and debtor's objection thereto. A hearing on this matter was held on March 16, 2010, in Greenville, North Carolina. A previous hearing on this same matter was held on February 10, 2010 (the "February hearing"). At the conclusion of the February hearing, the court continued the matter and allowed counsel the opportunity to submit memoranda.

## BACKGROUND

The debtor filed for relief under chapter 13 of the Bankruptcy Code on August 1, 2009. Along with the petition, the debtor filed her proposed chapter 13 plan. An amended plan was filed on October 21, 2009. The trustee filed a motion for confirmation on December 23, 2009. In his motion for confirmation, the trustee proposed to pay unsecured claims in the amount of

$39,870.38. This amount will pay unsecured creditors in full. The debtor owns 64 acres of land in Vance County with non-exempt equity of $27,386.67, and another 48 acres also in Vance County with non-exempt equity of $39,793.67. Total non-exempt equity in these assets for the benefit of unsecured creditors is $67,180.01.

The trustee's motion for confirmation provided for payments of $924.00 per month for 36 months, followed by payment of $1,266.00 per month for 21 months. Under this formula, the total paid into the plan would be $59,850.00. After reviewing the trustee's motion, the debtor discovered that the trustee also proposed payment of six percent (6%) interest on the unsecured debt compounded yearly. Such calculations on the unsecured claims balance of $39,870.38 equals an additional $2,392.05 annually. Over five years, the calculation results in interest of $11,961.11. When added to the principal amount of the unsecured claims, total payment to unsecured creditors would be $51,234.00. At the February hearing, the trustee argued that unsecured claimants should have the full benefit of $39,870.38 for investment. The trustee further argued that six percent interest compounded annually on the entire principal balance compensated the unsecured creditors as if the assets had been liquidated and unsecured creditors had their entire principal balance to invest.

In response, the debtor stated that the trustee's proposed calculations of interest were unreasonable. Instead, the debtor argued that interest should be paid on the declining balance. This form of amortization is akin to a loan repayment. Furthermore, the debtor contended that the rate of interest should be calculated using the federal judgment rate, or some rate more closely related to the market rate. However, the debtor contended that interest should not be paid on the original balance of the unsecured claims for the entire length of the plan, as this treatment would

2

result in an effective rate of interest much higher than six percent.  The court requested counsel to file memoranda of law on the issues.

In his memorandum, the trustee acknowledged that after speaking with colleagues, applying a declining balance amortization approach to unsecured claims would satisfy the requirements of 11 U.S.C. § 1325.  The trustee further indicated that he would withdraw the pending motion for confirmation and file a new motion in its place that provided for interest payable on the declining balance instead of annually on the entire principal balance.  At the hearing, the trustee asserted that the rate of interest applied to amortized calculations should be the Till rate.  Till v. SCS Credit Corp., 541 U.S. 465, 124 S.Ct. 1951(2004).  However, the debtor, in her memorandum and at the hearing, suggested that the federal judgment rate was appropriate.  The case at bar is one of first impression in the Eastern District of North Carolina.

## ANALYSIS

Section 1325(a)(4) reads, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title. . . ."  This is known as the "best interest of the creditors test."  8 Collier on Bankruptcy ¶ 1325.05[1] ( 15th ed.).  The aim of this test is to protect holders of allowed unsecured claims by ensuring payment, including deferred payments, of a *present* value not less than the liquidation value" of each claim.  Id. at ¶ 1325.05[2][b].  Thus, if liquidation "will result in full payment of all allowed unsecured claims, a debtor cannot defer payment of the claims [in a chapter 13] without providing interest payments to the creditors."  In re Hardy, 755 F.2d 75, 78 (6th Cir. 1985); also See, 8 Collier on Bankruptcy ¶ 1325.05[2][b] (15th ed.)  This is true unless the debtor

3

intends to make a lump sum payment to holders of unsecured claims immediately upon the effective date.  8 Collier on Bankruptcy ¶ 1325.05[2][b] (15th ed.) Paying interest supports the principle that creditors should be compensated for the lost time value of money caused by the deferral of payments. Id.  As the court noted in Hardy, "in an inflationary economy one dollar today is of greater value than one dollar tomorrow." 755 F.2d at 77.  The language of § 1325(a)(4) requires the court to project what the allowed unsecured claims in this case would receive had non-exempt property been liquidated by a chapter 7 trustee.

Both parties concede that in this district, there is no controlling precedent for the issue at hand.  In his memorandum the trustee mentions In re James (Case Number: 99-02275-5-ATS). However, James is not applicable to the present analysis.  In James, the plan was confirmed paying interest to unsecured creditors at a rate of six percent.  The case was heard on a motion for clarification of order confirming plan as to whether or not interest would be paid to unsecured claims at all.  The parties did not raise the issue of how the interest rate of six percent was determined.  Therefore, James does not answer the question presently before this court.

The trustee argues for application of the Till rate as the appropriate rate to be paid on unsecured claims.  Till held that under § 1325(a)(5) the correct method for determining interest payable to secured creditors in a chapter 13 cram-down plan was the formula approach of the national prime rate plus adjustment.  This approach was favored for its ability to parallel ordinary lending practices and market conditions.  Till, 541 U.S. at 478.  Adjustments were left to bankruptcy courts' findings of fact concerning circumstances of the estate, the nature of the security, and the duration of the plan. Id. at 479.  At the time pertinent for this case, the Till rate was 5.4 percent.  On the other hand, the federal judgment rate, which the debtor contends is

4

applicable, was 0.48 percent.[1]

The trustee argues that if the court were to find interest at the federal judgment rate, such a low rate of return will not put unsecured creditors in the same position as they would be under a chapter 7 liquidation.  It is the trustee's position that the Till rate is equally effective when applied to unsecured claims as it is to secured claims.  Other courts have followed this same reasoning. See In re Hoskins, 405 B.R. 576, (Bankr. N.D.W.V. 2009); 8 Collier on Bankruptcy ¶ 1325.05[2][b] (15th ed.)( "The principals followed in calculating present value interest under section 1325(a)(4) should be similar to those followed under section 1325(a)(5) because both sections share the goal of compensating creditors for the delay in payments they would otherwise receive immediately.")  This court, however, is not inclined to apply the Till rate as the correct rate of interest.   The plain language of 11 U.S.C. § 726(a)(5) says the "legal" rate.  The legal rate is established by 28 U.S.C. § 1961(a), which defines the federal judgment rate.  28 U.S.C. § 1961(a) states, "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week proceeding the date of the judgment."   In light of statutory language, this court is persuaded by the line of cases which hold the legal rate to be the federal judgment rate.  Specifically, the instructive case on the matter is In re Cardelucci, 285 F.3d 1231(9th Cir. 2002).

In Cardelucci, the Ninth Circuit set forth numerous reasons why the "legal rate" language in 11 U. S. C. §726(a)(5) should be the federal judgment rate.  The court began by considering the equitable nature of applying the federal judgment rate in a bankruptcy case.  Instead of

---

[1]http://www.federalreserve.gov/Releases/h15/data/Business_day/H15_TCMNOM_Y1.txt

bankruptcy courts applying varying, non-federal approaches to a federal statute, the federal judgment rate was found to promote "fairness, equality, and predictability" across the federal system and from one creditor to the next.  285 F.3d at 1234.  The court in Cardelucci continued its statutory interpretation by dissecting the chosen language.  Focusing on the use of the definite article "the" instead of "a" or "an," it was determined that "Congress' choice of the phrase "interest at the legal rate" suggests that it intended for bankruptcy courts to apply one uniform rate . . . ." Id. at 1235.  Before concluding, the court also noted that as of the petition, creditors essentially hold a claim against the estate.  This claim was analogized with the holding of a federal judgment.  As such, "the purpose of post-petition interest makes the award analogous to an award of post-judgment interest."  Id.  Cardelucci came before the court under the context of a chapter 11 confirmation, which like a chapter 13 confirmation, also includes the liquidation or best interest of the creditors test.

        In the Eastern District of North Carolina, chapter 7 trustees pay the legal rate from the petition date to the date of distribution when there is a surplus of estate assets.  For example, in In re Hufstetler, (Case Number: 07–4115-8-RDD), unsecured creditors were paid their principal amount plus the federal judgment rate of interest from the date of the filed petition to the date of distribution.  In Hufstetler, distribution to unsecured creditors did not occur for over two years after the petition date.  This amount of time is not unusual for administration of an average chapter 7 estate. [2]  Such should be the same in the chapter 13 case under the 11 U.S.C. § 1325(a)(4) requirements for confirmation.  Thus, payment should be made at the legal rate of

_____

        [2]Paula Hufstetler filed her petition on November 1, 2007 and the trustee's final report was filed March 5, 2010.

interest in effect on the date of the filing of the petition with said interest payable on the declining balance of the claim through the terms of the plan. In most cases, the effective date of the plan should be the filing date of the petition. See In re Beguelin, 220 B.R. 94, 101 (9th Cir. 1998)(affirming the bankruptcy court's determination that postpetition interest be paid from the date of the petition through and beyond the effective date of the confirmed chapter 13 plan); 8 Collier on Bankruptcy ¶ 1325.05[2][a] (15th ed.). This finding is consistent with the process undertaken at the commencement of a chapter 13 case. Generally, a proposed plan accompanies the petition and debtors must comply with the proposed plan from the filing date.[3]

Therefore, in a chapter 13 case, where there are sufficient non-exempt assets, which if liquidated in a chapter 7, would require payment at the legal rate of interest under §726(a)(5) and 28 U.S.C.1961, the federal judgment rate or legal rate will be paid on the declining principal balance of the unsecured claims from the petition date until the unsecured declining principal balance is paid in full. For application in this case, the legal rate on August 1, 2009 was 0.48 percent. Under the analysis described herein, the allowed unsecured claims in the debtor's case will be paid interest of 0.48 percent on the declining principal balance from the date of the filed petition until all principal and interest due is paid in full.

Based on the foregoing, the trustee's motion for confirmation is **DENIED**, and debtor's objection to confirmation is **SUSTAINED**. The trustee shall file an amended motion for confirmation that provides for the payment of the legal rate of interest of 0.48 percent on the declining principal balance of the unsecured claims.

_____

[3]Pursuant to LBR 4002-1(g)(2), chapter 13 debtors are required to make the first plan payment on the first day of the month immediately following the filing date of the petition.

**<u>END OF DOCUMENT</u>**